UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GAIL HARPER,

          Plaintiff,

    v.

RYAN LUGBAUER, et al.,

          Defendants.

Case No.  11-cv-01306-JST

**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT AND DENYING MOTION TO STRIKE**

Re: ECF Nos. 182, 185, 211, 212, 213, 247, 252

      Six motions for summary judgment are pending in this action for claims arising of an alleged sexual assault.[1]  Plaintiff Harper has opposed all of the motions, except for Defendant Page's motion.  For the reasons set forth below, each of the motions is GRANTED in its entirety.

## I.    BACKGROUND

### A.    The Parties and Claims

      Harper brings this action against George Gascon, Anna Brown, Carl Tennenbaum (a.k.a Carl Tee or Carl T), the San Francisco Police Department ("SFPD"), and the City and County of San Francisco ("the City") (collectively "City Defendants"); as well as Ryan Lugbauer, W.B. Coyle, David Kennedy, Larry Page, and Marcia Clay.[2]  The gravamen of the complaint is that

---

[1] Defendant Larry Page joined the other Defendants' motions for summary judgment.  See ECF No. 187, 189, 222.  Because the Court finds that the facts underlying Harper's defamation claim against Page are sufficiently similar to the defamation claims she has asserted against the other Defendants, the Court finds it appropriate to permit Page to adopt the arguments presented by the other Defendants in their motions for summary judgment.  See Levin Metals Corp. v. Parr-Richmond Terminal Co., 781 F. Supp. 1448, 1449 (N.D. Cal. 1991) (permitting joinder to motion for summary judgment where "the fact situations" of the movant and the party seeking joinder are "sufficiently similar to rule on both motions together herein").

[2] Because the SFPD cannot be sued as a separate entity, all claims asserted against it are deemed to be asserted against the City.  See Cal. Gov. Code §§ 23000, 23004(a).

United States District Court
Northern District of California

United States District Court
Northern District of California

Lugbauer sexually assaulted and harassed Harper as part of a conspiracy with the other Defendants, that the SFPD and the City failed to properly investigate these incidents, and that several of the Defendants made defamatory statements about Harper's mental health and sexual conduct.  Third Am. Compl. ("TAC"), ECF No. 78.

The action was removed from the San Francisco Superior Court on March 18, 2011.  ECF No. 1.  According to the Notice of Removal, Harper filed this action in San Francisco Superior Court on February 14, 2011.  Id.

Harper asserts the following claims in the operative complaint: (1) claims under California Civil Code section 52.4 against Coyle, Kennedy, Page, Lugbauer, Tennenbaum, Ertola, and Clay; (2) claims under California Civil Code section 51.7 against all Defendants; (3) a claim under 42 U.S.C. § 1983 against the City, Gascon, and Brown; (4) a claim under California Civil Code section 51 against the City; (5) claims for defamation against Lugbauer, Coyle, Kennedy, Page, Ertola, Clay, and Tennenbaum; and (6) claims for conspiracy to commit battery against Lugbauer, Coyle, Kennedy, Page, and Ertola.

On February 9, 2012, the Court granted Coyle and Page's motions to dismiss Harper's claims under section 52.4, section 51.7, and conspiracy to commit battery, to the extent that Harper asserted these claims against them.  See ECF No. 101.

Then, on March 15, 2012, the Court granted City Defendants' Anti-SLAPP motion and struck Harper's section 52.4 claim as to Tennenbaum, her section 51.7 claim as to City Defendants (except Ertola), and her section 51 claim against the City.  ECF No. 120.

Accordingly, the only claims currently at issue are the following: (1) claims under section 52.4 against Kennedy, Lugbauer, Ertola, and Clay; (2) claims under section 51.7 against Lugbauer, Kennedy, Clay, and Ertola; (3) a claim under 42 U.S.C. § 1983 against the City, Gascon, and Brown; (4) claims for defamation against Lugbauer, Coyle, Kennedy, Page, Ertola, Clay, and Tennenbaum; and (5) claims for conspiracy to commit battery against Lugbauer, Kennedy, and Ertola.

**B.**      **Facts**

Plaintiff Gail Harper and Defendant Marcia Clay have lived in the same apartment complex in San Francisco since 1983.  Clay Decl. ¶ 2.  Defendant Ryan Lugbauer moved into a condominium on that same block sometime before the spring of 2005.  Id. ¶ 5.

In December 2005, Lugbauer penetrated Harper's vagina with his finger.  Harper Dep. at 48, 295-96.  Harper and Lugbauer dispute whether this act was consensual.  Harper did not report the incident to the SFPD until eight months later, in August 2006.  Id. at 25.  Harper recalls that the officer who took her statement at that time inaccurately wrote "sexual battery" in his report, listed the incident date as December 15 even though she stated that it happened "a week to ten days before Christmas," and reported that she "didn't want Lugbauer prosecuted" when she actually stated that, "at the very least, [she] wanted it documented."  Id. at 49-51; see also Harper Decl., Ex. C (police report stating that Harper "only wants this incident documented").  The District Attorney's Office ultimately declined to prosecute the case.  Id. at 53.

In 2006 or 2007, Harper developed an acquaintance with Defendant Carl Tennenbaum, a San Francisco police officer who worked in her neighborhood.  Id. at 54-56.  Between July 2007 and May 2012, Harper made multiple reports to the SFPD based on her belief that Lugbauer was committing crimes against her.  Id. at 57, 60, 62-63, 88-94, 115, 135-36.  Harper interacted with Tennenbaum on two of these occasions.  Id. at 60, 63.

In July 2007, Harper went to the police station to lodge a complaint against Lugbauer after the two had a verbal altercation in a cafe.  Id. at 58, 60.  Though Harper recalls that Tennenbaum "tried to dissuade" her from making a police report, he nevertheless took a report that she was "satisfied with" after reviewing it.  Id. at 61.  In June 2008, Harper again went to the police station to report a letter she received from Lugbauer's attorney, which she viewed as "part of the course of [Lugbauer's] harassment."  Id. at 62-63.  She recalls that Tennenbaum "intercepted" her at the police station, and after she told him what she wanted to report, he took her into an interview room, "launched into a tirade," accused her of being "obsessed" with Lugbauer, stated that Lugbauer's only mistake "was not getting the good liquor out," and told Harper to "forget about

it." Id. at 65-66.  Harper assumed that Tennenbaum was referring to the 2005 sexual assault, but Tennenbaum did not actually indicate what he meant.  Id. at 72.  Ultimately, Tennenbaum informed Harper that, in his opinion, Lugbauer had not committed a crime, and he refused to make a report for her.  Id. at 65-66.  Harper does not recall Tennenbaum telling her that she could not attempt to make a report with another police officer if she so wished.  Id. at 76.

Harper interacted with Tennenbaum again a few days later when she went to the police station to request a copy of a police report.  Id. at 81.  On that occasion, Harper recalls that Tennenbaum told her that she could not make any more police reports.  Id.

At some point between early 2008 and October 30, 2008, Harper told Clay that Lugbauer had assaulted and raped her.  Clay Decl. ¶ 6.  Clay told Harper that Lugbauer could be flirtatious and that once, when she was out with a group of friends drinking, Lugbauer had patted her on the buttocks, but that she did not find Lugbauer's conduct offensive.  Id.  Harper told Clay that Lugbauer's conduct amounted to wrongful groping and asked Clay to write a letter about Lugbauer's acts in support of her legal action against Lugbauer, but Clay declined to do so.  Id.

After that conversation, Harper approached Clay outside of their apartment building on two other occasions and asked that Clay write a letter stating that Lugbauer had sexually battered her, but Clay again declined, stating that Lugbauer had not committed sexual battery against her. Id. ¶¶ 7, 9.

In November 2008, Harper's car was vandalized and she suspected that Lugbauer was the culprit.  She contacted the SFPD to make a report, but the police refused to name Lugbauer as a suspect because Harper did not see Lugbauer vandalize the car.  Harper Dep. at 88-89.

On or about November 11, 2008, Harper came to Clay's front door and suggested that Clay move her car because "rapist" Lugbauer might key it.  Clay Decl. ¶ 10.  Clay became upset over what she believed were Harper's attempts to get Clay involved in Harper's disputes with Lugbauer, and she told Harper that she was crazy.  Id.  Harper and Clay then had a heated exchange for a few minutes in the apartment complex courtyard., but nobody else was present during the incident.  Id.

4

1    In March 2009, Harper's car was vandalized again, and the police again did not name

2    Lugbauer as a suspect despite her belief that he was the culprit because Harper did not see

3    Lugbauer commit the vandalism.  Harper Dep. at 94.

4    On August 7, 2009, Harper called 911 to report Clay's son, Nick, for yelling at her.  Id. at

5    96-97, 137.  Tennenbaum was one of the officers who responded to the 911 call.  Id. at 96.  Harper

6    did not hear Tennenbaum say anything to anyone other than another officer on the scene.  Id. at

7    98.  Nevertheless, based on a letter that Clay wrote to her landlord, Harper believes that

8    Tennenbaum made defamatory statements about her to Clay at the scene.  Id. at 151, 350.

9    Clay was not at home at the time the police arrived for Nick.  She learned of the incident

10    from doctors at San Francisco General Hospital, where Nick was taken.  Clay subsequently went

11    to the police station to learn more about the incident.  There, she talked with Tennenbaum to find

12    out more details about the incident involving her son, and Tennenbaum told her that Harper had

13    called the police concerning Nick and that Harper previously filed a criminal charge against

14    Lugbauer but that there had been no subsequent prosecution.  Clay Decl. ¶¶ 12, 13.

15    On August 7, 2009, Clay received an email from Harper in which Harper admitted calling

16    the police concerning Nick.  Clay sent a follow-up email to Tennenbaum on August 7, 2009,

17    stating that she had learned from her building manager that Harper had been sending threatening

18    letters to her landlord seeking her and her son's eviction from the building.  In the email, she

19    asked Tennenbaum to "kindly contact Ms. Harper and request that she cease all her letter-writing,

20    her meddling, and harassment of [her] and of Nicholas."  Id. ¶ 14 & Ex. 5 at 4.  Clay forwarded to

21    Lugbauer her email to Tennenbaum and the email she received from Harper on August 7, 2009.

22    Id. ¶ 15.

23    Clay wrote a letter to her landlord on August 8, 2009, to defend herself against a possible

24    eviction resulting from Harper's threats to the landlord.  In it, she urged her landlord not to evict

25    her and referenced her meeting with Tennenbaum on August 7.  Clay Decl. ¶¶ 19-13.

26    On August 9, 2009, Lugbauer wrote Tennenbaum an email stating that Harper was

27    "making up stories" about Nick, accusing Lugbauer of being a rapist, bullying neighbors, and was,

28

United States District Court
Northern District of California

among other things, a "very unhappy" and "disturbed" person.  Harper Dep. at 99.  Tennenbaum responded by stating that he "agreed" and that Harper "seems to be having trouble coping with many of the issues in her life, to put it mildly," and that it pained him, as someone who had "been friends with" Harper, to see her "losing her grip."  Id.  Harper believes that Tennenbaum's response to this email is defamatory because, in her view, Tennenbaum is "adopting the things that Lugbauer said about" her.  Id. at 102-03, 350.  Other than this email and the letter that Clay sent to her landlord, Harper supports her defamation claim against Tennenbaum with a recollection that a "person who used to be [her] friend, whose name [Harper] no longer remember[s]," told her that police officers were "talking" about her.  Id. at 105-106.

On October 31, 2009, Lugbauer filed a police report against Harper stating that Harper was stalking, harassing, and video-taping him in public.  Id. at 108-110, 250.  Three days later, on November 3, 2009, Harper applied for a civil harassment restraining order against Lugbauer and received a temporary restraining order on November 20, 2009, pending a hearing on a permanent restraining order.  Id. at 111.  Later, Harper went to the police station to report her belief that, though Lugbauer lived on her block, he nonetheless had violated the temporary restraining order by walking by her building twice.  Id. at 115, 119; Request for Judicial Notice ("RJN"), Ex. A at 9.  After consulting with other officers, an unidentified officer informed Harper that no police response was warranted.  Id. at 117-18.  Harper told the officer that Lugbauer's behavior constituted a felony, but the officer disagreed.  Id.  The officer did not say anything to Harper to suggest that her order would not be enforced if Lugbauer violated it in the future.  Id. at 131-133.  Though Tennenbaum was not present, Harper maintains that he exerted influence over the officers with whom she interacted because an unnamed friend told her that the officers "were all talking," and "Tennenbaum is a loud-mouth and a know-it-all."  Id. at 116, 119-20.  Harper speculates that the officers communicated to Lugbauer that he was "safe" and that the police would "never do anything to help her," but no one ever told her that such a communication occurred.  Harper Dep. at 127-28.

On November 19, 2009, Lugbauer filed a petition for a civil restraining order against

United States District Court
Northern District of California

6

United States District Court
Northern District of California

Harper.  RJN, Ex. A at 3.  A hearing was held on November 20, 2009, regarding the temporary restraining order that Harper had obtained against Lugbauer, but it was continued until December 18, 2009, to allow the court to address Lugbauer's petition for a restraining order against Harper at the same time.  Id. at 3, 7; RJN, Ex. B.  Harper's temporary restraining order remained in effect through the new hearing date.  RJN, Ex. A at 8:25-27.  At the hearing, Lugbauer's attorney requested that the court change the number of yards in the stay-away provision of the order pending the continued court hearing and stated that "Ms. Harper has already called the police against [Lugbauer] and accused him of violating the order in his neighborhood."  RJN, Ex. A at 9.  The court noted it did not want "Lugbauer to be in violation of his order by going to his home" and narrowed the number of feet in the stay-away provision.  Id. at 9.  Lugbauer's attorney later noted that the "Sheriff's Department has already called, and [Lugbauer] had to go down and clarify with the Sheriff's Department."  Id. at 11.  Despite this comment, Harper believes that the "only way" Lugbauer's attorney could have known that Harper went to the police to enforce the restraining order is if someone from the SFPD contacted Lugbauer.  Harper Dep. at 100-01, 338.  On December 18, 2009, both Harper's and Lugbauer's applications for restraining orders against each other were denied.  Id. at 133-134.  Since the hearing, Harper made one additional police report against Lugbauer in May of 2012 after a verbal altercation at a cafe in which Harper called Lugbauer a rapist, and Lugbauer called Harper a liar.  Id. at 135-136.

On April 3, 2010, Clay received two emails from Harper in which Harper stated that Clay defamed her to her landlord via her August 2009 letter and demanded that Clay write a letter of retraction to her landlord.  Clay notified Lugbauer of these emails to inform him of Harper's threats and asked for his advice as to how to respond to Harper's threats of a lawsuit.  Clay Decl. ¶ 25.

Harper's interactions with Anna Brown consist of an unanswered letter that Harper wrote to Brown to complain about the conduct of the police officers involved in her restraining order proceedings against Lugbauer.  Harper Dep. at 137-38.  Harper copied George Gascon on communications to Anna Brown and other law enforcement personnel.  Id. at 138.  Harper

7

1    believes that both "failed to intervene when their officers were busy defaming [her] and helping

2    Lugbauer unofficially." <u>Id.</u> at 138.

3         Harper has not personally interacted with San Francisco fire fighter Chad Ertola since

4    before the incident with Lugbauer in 2005.  Harper Dep. at 35.  In approximately 2010, Harper

5    spoke with a man she knows only as "Phil," who she believes is Ertola's neighbor. <u>Id.</u>  Harper

6    claims that Phil told her that Ertola told Phil that Harper is "easy." <u>Id.</u> at 36.  Harper wrote a letter

7    to complain about Ertola's purported comments to the chief of the fire department, even though

8    she does not know the context in which Ertola made the alleged statement.  <u>Id.</u> at 36-37.

9    **II.      LEGAL STANDARD**

10        Summary judgment is proper when a "movant shows that there is no genuine dispute as to

11   any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

12   "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by"

13   citing to depositions, documents, affidavits, or other materials.  Fed. R. Civ. P. 56(c)(1)(A).  A

14   party also may show that such materials "do not establish the absence or presence of a genuine

15   dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R.

16   Civ. P. 56(c)(1)(B).  An issue is "genuine" only if there is sufficient evidence for a reasonable

17   fact-finder to find for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-

18   49 (1986).  A fact is "material" if the fact may affect the outcome of the case.  <u>Id.</u> at 248.  "In

19   considering a motion for summary judgment, the court may not weigh the evidence or make

20   credibility determinations, and is required to draw all inferences in a light most favorable to the

21   non-moving party." <u>Freeman v. Arpaio</u>, 125 F.3d 732, 735 (9th Cir. 1997).

22        Where the party moving for summary judgment would bear the burden of proof at trial,

23   that party bears the initial burden of producing evidence that would entitle it to a directed verdict if

24   uncontroverted at trial.  See <u>C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.</u>, 213 F.3d 474,

25   480 (9th Cir. 2000).  Where the party moving for summary judgment would not bear the burden of

26   proof at trial, that party bears the initial burden of either producing evidence that negates an

27   essential element of the non-moving party's claim, or showing that the non-moving party does not

28

United States District Court
Northern District of California

8

have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show that a genuine issue of material fact exists.  See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).

The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).  Indeed, it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact." Id.  "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted).  If the non-moving party fails to make this showing, the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## III.   DISCUSSION

Before turning to the merits of the motions for summary judgment at issue, the Court notes that some of Harper's oppositions failed to comply the local rules, as they are written in font smaller than the requisite 12-point font. See Civil L.R. 3-4(c).  City Defendants moved to strike these oppositions for failure to comply with Civil Local Rule 3-4.  ECF No. 254.  Though City Defendants' motion is well-taken, the Court will DENY the motion to strike and will consider Harper's oppositions on the merits.

The Court notes also notes that Harper filed a series of "corrected" oppositions, supplemental declarations, and exhibits after the deadline for responding to the pending motions to summary judgment, which was November 8, 2013.  ECF Nos. 242-245, 249, 250, 251, 253, 256, 257.  The Court will not consider these untimely submissions for any purpose.  After granting Harper several extensions of the relevant deadlines, the Court made clear that it would not entertain further requests for extensions or tolerate untimely submissions. ECF No. 224.  The Court also will not consider objections to evidence that were filed by any party separately from that party's brief or memorandum.  See, e.g., ECF No. 263; see also Civil L.R. 7-3 (providing that

United States District Court
Northern District of California

1   evidentiary objections must be contained within the brief or memorandum).

2       **A.      Claims under 42 U.S.C. § 1983**

3       Harper alleges that the City, the SFPD, George Gascon, and Anna Brown promulgated and

4   enforced policies that violated Harper's "constitutional rights and protections" because they

5   resulted in the failure of City employees to properly investigate and handle allegations of sexual

6   crimes and misconduct by police officers.  TAC ¶¶ 84-91.  Harper also alleges that City

7   Defendants failed to train and to supervise SFPD employees on sex crimes and gender violence.

8   Id.  Harper does not specify in the operative complaint the constitutional rights that City

9   Defendants allegedly violated.

10       "Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person

11   acting under color of state law committed the conduct at issue, and (2) that the conduct deprived

12   the claimant of some right, privilege, or immunity protected by the Constitution or laws of the

13   United States." Leer v. Murphy, 844 F.2d 628, 632–33 (9th Cir. 1988).

14       Municipalities are liable under section 1983 when "action pursuant to official policy of

15   some nature cause[s] a constitutional tort." Monell v. Department of Social Services of New York,

16   436 U.S. 658, 691 (1978).  An action or policy can be "official" if "made by [the municipality's]

17   law makers or by those whose edicts or acts may fairly be said to represent official policy." Id. at

18   694.  "Monell requires only that the official policy cause the constitutional violation, not that the

19   policy itself be unconstitutional." McKinley v. City of Eloy, 705 F.2d 1110, 1117 (9th Cir. 1983).

20   "Conversely, municipalities are not subject to section 1983 liability under a respondeat superior

21   theory for the isolated torts of their employees." Id. at 116.

22       To establish liability under Monell, a plaintiff must satisfy four conditions: "(1) that he

23   possessed a constitutional right of which he was deprived; (2) that the [local governmental entity]

24   had a policy; (3) that this policy 'amounts to deliberate indifference' to plaintiff's constitutional

25   right; and (4) that the policy is the 'moving force behind the constitutional violation.'" Oviatt v.

26   Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (citation omitted).

27       A failure to train or supervise can amount to a "policy or custom" sufficient to impose

28

United States District Court
Northern District of California

10

liability on a municipality.  Anderson v. Warner, 451 F.3d 1063, 1070 (9th Cir. 2006).  This theory of liability can prevail only where the failure to train or supervise "amounts to deliberate indifference to the rights of persons with whom the police come into contact."  See Alexander v. City & Cnty. of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994). A showing of deliberative indifference requires allegations and evidence showing "a program-wide inadequacy" in training or supervision that was "the result of a deliberate or conscious choice."  See Alexander v. City & Cnty. of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994) (citations and internal quotation marks omitted).

City Defendants move for summary judgment on this claim on the grounds that Harper's claims are barred by the statute of limitations; that Harper has no evidence to show that her constitutional rights were violated; and that Harper has no evidence to show that Gascon or Brown were personally involved in the events giving rise to her claims.  The Court addresses each of these arguments in turn.

### 1.      Statute of Limitations

"Section 1983 does not contain its own statute of limitations.  Without a federal limitations period, the federal courts borrow the statute of limitations for § 1983 claims applicable to personal injury claims in the forum state."  TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999) (citation omitted).  In California, the statute of limitations for personal injury actions is two years, Canatella v. Van De Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007), and the statute of limitations for defamation claims is one year, Cal. Code Civ. P. § 340.

Though federal courts borrow the forum state's statute of limitations for § 1983 claims, "federal, not state, law determines when a civil rights claim accrues."  TwoRivers, 174 F.3d at 991 (citation omitted).  "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."  Id. (citation omitted).  "Where the federal courts borrow the state statute of limitations, [courts] also borrow the forum state's tolling rules."  Id. at 992.

City Defendants argue that, because Harper allegedly filed her original complaint against

United States District Court
Northern District of California

them on November 18, 2010, her § 1983 claims are barred to the extent they are based on defamatory actions that took place before November 18, 2009, or on non-defamatory actions that took place before November 18, 2008.  City Defendants also contend that the applicable statutes of limitations are not subject to tolling because Harper "obviously knew about her interactions with police officers the moment they transpired."  ECF No. 182 at 13.

Harper responds that her § 1983 claim is subject to tolling based on the discovery rule and the continuing course of conduct rule.  ECF No. 238 at 7-9.

Before turning to the question of whether Harper's § 1983 claims are subject to tolling, the Court notes that City Defendants' assertion that Harper originally filed this action on November 18, 2010, is not supported by the record.  City Defendants cite to the Notice of Removal to establish this date, but the Notice of Removal does not contain the date on which Harper originally sued Defendants.  Instead, the Notice of Removal, citing to the First Amended Complaint that Harper filed in Superior Court, states that Harper filed this action on February 14, 2011.  See ECF No. 1 at 1.  In the absence of any evidence showing that Harper filed a complaint against Defendants prior to February 14, 2011, the issue before the Court is whether Harper's § 1983 claims are barred to the extent they are based on defamatory actions that took place before February 14, 2010, and non-defamatory actions that took place before February 14, 2009.

As will be discussed below, Harper fails to properly invoke any tolling doctrine in connection with her § 1983 claims, and therefore, these claims are barred to the extent they are based on defamatory actions that took place before February 14, 2010, and non-defamatory actions that took place before February 14, 2009.

### a.      Discovery Rule

California has the "discovery rule" of tolling, "which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."  Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807 (Cal. 2005) (citation omitted).  "A plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements."  Id. (citations and internal quotation marks omitted). "Under the discovery rule,

1    suspicion of one or more of the elements of a cause of action, coupled with knowledge of any

2    remaining elements, will generally trigger the statute of limitations period." Id. (citations

3    omitted).  These elements refer to "the 'generic' elements of wrongdoing, causation, and harm."

4    Id. (citation omitted).  Thus, in determining whether the discovery rule applies, California courts

5    "look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured

6    them." Id.  This is because "plaintiffs are required to conduct a reasonable investigation after

7    becoming aware of an injury, and are charged with knowledge of the information that would have

8    been revealed by such an investigation." Id. at 808.

9        Harper argues that her § 1983 claims are based "in part" on Tennenbaum's "years-long,

10   secret campaign to frustrate [her] First Amendment rights, in part on Carl T's (and likely other

11   officers') retaliation for the OCC complaints [she] filed, and in part on the SFPD's failure to train

12   or supervise Carl T, permitting him to abuse [her]." ECF No. 238 at 7.  She contends that she did

13   not begin to discover these acts until November 19, 2009, when Lugbauer attached certain

14   documents to his request for a restraining order against Harper, namely the emails between

15   Lugbauer and Tennenbaum, and Clay's letter to her landlord. Id.  Harper also contends that she

16   was diligent in pursuing her claims against City Defendants because she reported the sexual

17   assault in August 2006 and because she filed a complaint against Tennenbaum on May 14, 2010.

18       City Defendants respond that the discovery rule does not apply because Harper has been

19   aware of the police conduct giving rise to her § 1983 claims since August 2008, when Harper sent

20   a letter to Gavin Newsom, the San Francisco Commission on the Status of Women, and San

21   Francisco Women Against Rape about "the failure of the SFPD and the District Attorney to

22   investigate rapes and prosecute rapists." Pederson Decl., Ex. A at 11, ECF No. 259.[3]

23       The Court concludes that the discovery rule does not apply here.  Harper's § 1983 claim is

24   based on City Defendants' failure to properly investigate and handle allegations of sexual crimes

25

26   _____

27   [3] The document referenced here is Harper's Response to City Defendants' First Set of Document
     Requests, in which she states that some of the documents that relate to or describe the 2005 sexual
     incident with Lugbauer include the letters she sent to Gavin Newsom and others.

28

United States District Court
Northern District of California

13

1    and related misconduct by police officers.  TAC ¶¶ 84-91.  The letters Harper sent to Gavin

2    Newsom and others touch directly on these issues, thus establishing that Harper was aware of the

3    purported wrongdoing that forms the basis of her § 1983 claims since at least August 2008.  The

4    facts she learned in November 2009 when Lugbauer filed an application for a restraining order

5    may have given her the benefit of additional information to support her claims, but they do not

6    change the fact that Harper had reason to suspect since at least 2008 that she had been wronged by

7    City Defendants.  Accordingly, Harper's § 1983 claims are not tolled based on the discovery rule.

8                                    **b.       Continuing Conduct**

9           Under California's continuing violation doctrine, a plaintiff may recover "for actions that

10   take place outside the limitations period if these actions are sufficiently linked to unlawful conduct

11   within the limitations period[.]"  <u>Komarova v. Nat'l Credit Acceptance, Inc.</u>, 175 Cal. App. 4th

12   324, 343 (2009) (citation and internal quotation marks omitted).  "The key is whether the conduct

13   complained of constitutes a continuing pattern and course of conduct as opposed to unrelated

14   discrete acts.  If there is a pattern, then the suit is timely if the action is filed within one year of the

15   most recent violation and the entire course of conduct is at issue."  <u>Id.</u> (citation and internal

16   quotation marks omitted).

17          Harper argues that the statute of limitations on her § 1983 should be tolled because she

18   "was raped, then stalked, harassed and defamed over a period of years" as a result of "a conspiracy

19   with Lugbauer to commit domestic violence or stalking," and "[i]t did not become clear there was

20   no hope of relief until after [she] was denied a permanent restraining order in December of 2009."

21   ECF No. 238 at 9-10.  She further argues that "domestic violence is a continuing tort."  <u>Id.</u>

22          City Defendants respond that there is no logical framework for a continuing conduct theory

23   of tolling and that Harper has not alleged any facts to establish that she was a victim of domestic

24   violence within the meaning of California Family Code section 6211(c), as she has never alleged

25   that she had "frequent, intimate associations" with Lugbauer.  ECF No. 259 at 4-5.

26          The Court concludes that Harper has failed to establish that tolling under the continuing

27   course of conduct doctrine is appropriate.  To the extent that Harper's § 1983 claim is based on a

28

1   pattern of conduct by City Defendants, Harper was aware of such conduct since at least August

2   2008, when she wrote extensively about such conduct to City officials, as described in the

3   previous section.  Moreover, any allegations of domestic violence are wholly unsupported by the

4   record.  As such, the § 1983 statute of limitations cannot be tolled under this doctrine.

### 2. Constitutional Violations

6   City Defendants move for summary judgment on Harper's § 1983 claims on the ground

7   that she has no evidence to show that any of them violated her constitutional rights based on

8   conduct that occurred within the applicable statutes of limitations.

9   Harper responds that City Defendants violated her constitutional rights as follows.

10   First, Harper contends that City Defendants violated her First Amendment right to exercise

11   free speech and to access police services and the courts because (1) Tennenbaum interfered with

12   her attempt to "report Lugbauer's crimes and Nicholas' misconduct"; (2) Tennenbaum coached

13   "Lugbauer on what to say in the restraining order proceedings to avoid issuance of a permanent

14   restraining order"; and (3) Tennenbaum "sabotage[d]" the "5150 detention and evaluation of

15   Nicholas Besher."  ECF No. 238 at 15.

16   The Court concludes that City Defendants are entitled to summary judgment on this claim.

17   Even assuming that the conduct at issue could give rise to a violation of her First Amendment

18   rights and that the claim is based on conduct that is not barred by the statute of limitations, Harper

19   offers no evidence to support her contentions.  Her only citations are to case law.

20   Second, Harper contends that City Defendants violated her First Amendment right to be

21   free of police retaliation, but she does not provide any detail as to the theory supporting this claim.

22   Harper states only that Lugbauer will testify that "he advised Clay that [she] had 'alienated the

23   police department' by 'going after Carl T,'" and that her own "testimony will supply sufficient

24   facts from which a jury could draw the inference SFPD officers engaged in illegal acts to retaliate

25   against her for reporting their friend Lugbauer's crimes and reporting Central Station officers to

26   the OCC."  ECF No. 238 at 16 (citing Exhibit A¶ 85; Exhibit FF; and Exhibit A, ¶¶29, 35, 40, 45,

27   53, 60, 62, 63, 64, 72, 73, 76).

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The Court concludes that City Defendants are entitled to summary judgment on this claim.

2  Even assuming that the conduct at issue could give rise to a violation of Harper's First

3  Amendment rights and that the claim is based on conduct that is not barred by the statute of

4  limitations, the evidence Harper cites in support of her claim is insufficient to create a genuine

5  issue of material fact.  Harper cites to an email from Lugbauer to Clay that is not authenticated and

6  is therefore inadmissible, in which Lugbauer states that Harper "recently alienated the police dept

7  by going after Carl T and the guys at station 28 have had some recent issues with her."  ECF No.

8  15, Ex. 31 ("Exhibit FF").  Harper also cites to statements in her own declaration, which are

9  speculative, uncorroborated, or lack foundation, and thus are insufficient to raise a genuine issue

10 of material fact as to whether her constitutional rights were violated by City Defendants.[4]  See

11 Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc., 198 F.3d 1143, 1152 (9th Cir.

12 1999) (holding that "vague, uncorroborated, and clearly self-interested testimony did not create a

13 genuine issue for trial"); see also Nelson v. Pima Cmty. Coll., 83 F.3d 1075, 1081-82 (9th Cir.

14 1996) (citation omitted) ("[M]ere allegation and speculation do not create a factual dispute for

15 purposes of summary judgment.").

16    Third, Harper contends that City Defendants violated her First and Fourteenth Amendment

17 rights by harassing her based on her sex.  She argues that "Carl T psychologically abused Plaintiff

18 and encouraged others, including Lugbauer, to do the same," and that the City "has permitted Carl

19

20 _____

[4] See ECF No. 215, Ex. 1 ("Exhibit A") ¶ 29 (providing that  Carl T failed to give Harper a copy
21 of the 2006 rape report); ¶ 35 ("Carl T confronted me angrily at Central Station and isolated me in
    an interview room."); ¶ 40 (providing that Tennenbaum "he angrily informed me he would not
22 permit me to file any more police reports"); ¶ 45 ("I filed a complaint with the Office of Citizen
    Complaints against SFPD Officer Korte, who was one of the officers at Central Station defendant
23 Carl T worked with, supervised and liked."); ¶ 53 (providing that "During his talk with Clay, Carl
    T falsely told her that I am "mentally ill" and otherwise defamed me"); ¶ 60 (providing that
24 "Lugbauer repeatedly violated my restraining order, members of the SFPD refused to enforce the
    order"); ¶¶ 62-24 (providing that "SFPD failed to provide me with a copy of Lugbauer's 8-page
25 statement submitted with his October 31, 2009 police report" until after restraining order
    proceedings had ended); ¶¶ 72, 73, 76 (providing that "Lugbauer has many friends in the police
26 department – including Commander James Dudley – and does business with both active and
    retired police officers" and that Harper did not discover that Lugbauer also is Tennenbaum's
27 friend until December 2009).
28

United States District Court
Northern District of California

1  T to engage in and encourage extreme abuse of Plaintiff, despite CITY's well-documented

2  awareness for decades domestic violence can have deadly consequences, and the SFPD response

3  to domestic violence and rape has been inadequate." ECF No. 238 at 16 (citing Exhibit A, ¶¶35-

4  40, 53-55 57, 61; Exhibits W, LL, MM, and NN.)

5     The Court concludes that City Defendants are entitled to summary judgment on this claim.

6  Even assuming that the conduct at issue could give rise to a violation of her First and Fourteenth

7  Amendment rights and that the claim is based on conduct that is not barred by the statute of

8  limitations, the evidence Harper cites in support of her claim is insufficient to create a genuine

9  issue of material fact as to whether her constitutional rights were violated by City Defendants.

10  She cites to Exhibits W, LL, MM, and NN, which are not authenticated and therefore are

11  inadmissible.[5] She also cites to statements in her own declaration, which are uncorroborated,

12  speculative, or lack foundation and therefore are insufficient to preclude summary judgment.[6] See

13  Filipino Yellow Pages, 198 F.3d at 1152 (holding that "vague, uncorroborated, and clearly self-

14  interested testimony did not create a genuine issue for trial"); see also Nelson, 83 F.3d at 1081-82

15  (citation omitted) ("[M]ere allegation and speculation do not create a factual dispute for purposes

16  of summary judgment.").

17     Fourth, Harper contends that City Defendants violated her Fourteenth Amendment rights

18  by subjecting her to "state-created" danger. Harper claims that the City "made explicit assurances

19  to Lugbauer he could attack [her] with impunity, and by implicitly but affirmatively encouraging

20  Lugbauer's violence against her," and that Tennenbaum "created and enhanced Nicholas Besher's

21

22  _____

23  [5] See ECF No. 215, Ex. 22 ("Exhibit W") (unauthenticated print out of the City's website on the
24  Department on the Status of Women); Ex. 37 ("Exhibit LL") (unauthenticated copy of a report on
   domestic violence in San Francisco); Ex. 38 ("Exhibit MM") (unauthenticated print out from the
   SFGov website); Ex. 39 (unauthenticated report from the Department on the Statuts of Women).

25
26  [6] See ECF No. 215, Ex. 1 ("Exhibit A") ¶¶ 35-40 (providing that Tennenbaum became angry at
   her, disbelieved her rape claims, and did not permit her to file additional police reports); ¶¶ 53-55
27  (providing that Tennenbaum made defamatory statements about her); ¶ 57 (providing that
   Lugbauer taunted her); ¶ 61 (providing that Tennenbaum "coached Lugbauer on what to say in his
28  restraining order papers").

1    dangerousness to [her] by sabotaging the 5150 process."  ECF No. 238 at 17 (citing Exhibit A, ¶¶

2    39-40, 54-55, 57, 61-62, 72, 77-78, 82-85).

3           The Court concludes that City Defendants are entitled to summary judgment on this claim.

4    Even assuming that the conduct at issue could give rise to a violation of her Fourteenth

5    Amendment rights and that the claim is based on conduct that is not barred by the statute of

6    limitations, the evidence Harper cites in support of her claim is insufficient to create a genuine

7    issue of material fact as to whether City Defendants violated her constitutional rights because it is

8    limited to statements in her own declaration that are uncorroborated, speculative, or lack

9    foundation.[7]  See Filipino Yellow Pages, 198 F.3d at 1152 (holding that "vague, uncorroborated,

10   and clearly self-interested testimony did not create a genuine issue for trial"); see also Nelson, 83

11   F.3d at 1081-82 (citation omitted) ("[M]ere allegation and speculation do not create a factual

12   dispute for purposes of summary judgment.").

13          Fifth, Harper contends that City Defendants violated her Fourteenth Amendment rights by

14   treating her rape differently than rapes committed by strangers.  Harper argues that the City "has a

15   long-standing policy of not investigating or prosecuting non-stranger rapists," that "Gascon will

16   have to admit non-stranger rapists are seldom prosecuted," and that the City has departed from its

17   "normal" procedures.  ECF No. 238 at 18 (citing Exhibit E ¶¶17, 19, Exhibit II; Exhibit JJ, and

18   Exhibit KK).

19          The Court concludes that City Defendants are entitled to summary judgment on this claim.

20   Even assuming that the conduct at issue could give rise to a violation of her Fourteenth

21   Amendment rights and that the claim is based on conduct that is not barred by the statute of

22

23   _____

24   [7] See ECF No. 215, Ex. 1 ("Exhibit A") ¶¶ 39-40 (providing that Tennenbaum became angry at
     her, disbelieved her rape claims, and did not permit her to file additional police reports), ¶¶ 54-55
25   providing that Tennenbaum and Lugbauer defamed Harper via email); ¶ 57 (providing that
     Lugbauer taunted Harper); ¶¶ 61-62 (providing that Tennenbaum "coached Lugbauer on what to
26   say in his restraining order papers"); ¶ 72 (providing that Harper discovered in December 2009
     that Lugbauer and Tennenbaum were friends); ¶¶ 77-78 (providing that Tennenbaum's friendship
27   with Lugbauer changed the latter's attitude toward the alleged rape); ¶¶ 82-85 (providing that Nick
     Bersher is a threat and that Lugbauer told Clay that Harper alienated the police).
28

United States District Court
Northern District of California

United States District Court
Northern District of California

1   limitations, the evidence Harper cites in support of her claim is unauthenticated and inadmissible,

2   or otherwise speculative and uncorroborated, and therefore it is insufficient to create a genuine

3   issue of material fact as to whether City Defendants violated her constitutional rights.[8]  See

4   Filipino Yellow Pages, 198 F.3d at 1152 (holding that "vague, uncorroborated, and clearly self-

5   interested testimony did not create a genuine issue for trial"); see also Nelson, 83 F.3d at 1081-82

6   (citation omitted) ("[M]ere allegation and speculation do not create a factual dispute for purposes

7   of summary judgment.").

8          Finally, Harper contends that City Defendants violated her Fourteenth Amendment rights

9   by failing to treat the 2005 incident with Lugbauer as domestic violence.  She bases this claim on a

10  statement by "[a] lieutenant in the DV Unit" to her that, "unless [she] claimed she had a dating

11  relationship with Lugbauer, [she] could not benefit from the domestic violence laws."  ECF No.

12  238 (citing Exhibit A ¶¶ 88, 89).

13         The Court concludes that City Defendants are entitled to summary judgment on this claim.

14  Even assuming that the conduct at issue could give rise to a violation of Harper's Fourteenth

15  Amendment rights and that the claim is based on conduct that is not barred by the statute of

16  limitations, the evidence Harper cites in support of her claim is insufficient to create a genuine

17  issue of material fact, because it is inadmissible hearsay.[9]

18         Accordingly, City Defendants' motion for summary judgment on Harper's § 1983 claims

19  is GRANTED.

20

21

22  _____

    [8] See ECF No. 15, Ex. 5 ("Exhibit E") (declaration of Janelle White) (providing that the City has

23  not provided White with information regarding the number of rapes charged in San Francisco);
    Ex. 34 ("Exhibit II") (unauthenticated guidelines for sexual assault investigation); Ex. 35

24  ("Exhibit JJ") (unauthenticated guidelines for sexual assault investigation); Ex. 36 ("Exhibit KK")
    (unauthenticated letter from the City explaining reasons why alleged rape was not prosecuted).

25
    [9] See ECF No. 215, Ex. 1 ("Exhibit A") ¶¶ 88, 89 ("I will testify that lieutenant in the SFPD

26  Domestic Violence Unit told me that, unless I claimed I had a dating relationship with Lugbauer, I
    could not benefit from the enhanced protections of domestic violence laws, even though Lugbauer

27  claims a dating relationship with me and at least some SFPD officers believe Lugbauer had such a
    relationship with me.").

28

**B.      Defamation**

Harper alleges that Lugbauer Coyle, Kennedy, Page, Ertola, Clay, and Tennenbaum defamed her.  TAC ¶ 99.

Under California law, defamation "involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." Price v. Stossel, 620 F.3d 992, 998 (9th Cir. 2010) (citation and internal quotation marks omitted).  "Publication means communication to some third person who understands the defamatory meaning of the statement and its application to the person" allegedly defamed. Smith v. Maldonado, 72 Cal.App.4th 637, 645 (1999).

In determining the viability of a defamation claim, "the threshold question . . . is whether a reasonable factfinder could conclude that the contested statement implies an assertion of objective fact," and "[i]f the answer is no, the claim is foreclosed by the First Amendment." Gardner v. Martino, 563 F.3d 981, 987 (9th Cir. 2009) (internal quotation marks and citation omitted).  The Ninth Circuit uses a three-part test to resolve this question: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates the impression, and (3) whether the statement in question is susceptible of being proved true or false." Id. (citations omitted). When a speaker "outlines the factual basis for his conclusion, his statement is not defamatory and receives First Amendment protection" if the "general tenor ma[kes] clear that the . . . statements were from his personal viewpoint, and not assertions of an objective fact." Id.  "[T]he distinction between alleged fact or opinion is a question of federal law." Dworkin v. Hustler Magazine Inc., 867 F.2d 1188, 1194 (9th Cir. 1989).

The statute of limitations on a defamation claim is one year from the date on which the plaintiff discovered that the defamatory statement was published.  Cal. Code Civ. P. § 340.

**1.      Coyle**

Harper alleges that Coyle, "as part of his quest to find sexually available women while working at the Caffe Roma" in 2005, "engaged in gossip about women in general – and

1    defamatory talk about [her] in particular – with other Defendants in this case, which led to the

2    conspiracy to commit rape on [her] ultimately carried out by" Lugbauer, "who also frequented

3    Caffe Roma during that time."  TAC ¶ 16.  Harper also alleges that Coyle defamed her in 2010

4    when he approached her in a park and told her that "he did not believe she was raped, that

5    'everyone' was talking about [her] and 'nobody' believed she was raped."  Id. ¶ 68.

6         Coyle moves for summary judgment on this claim on the ground that Harper has no

7    evidence to establish that he has made any defamatory statements about her. [10]  Coyle argues that

8    the claim is based on statements he allegedly made in 2005 at Café Roma and in a 2010 at

9    Washington Square.  Coyle contends that there is no evidence on the record establishing that he

10   made any defamatory statement in 2005, and the evidence on the record shows that the 2010

11   statement is not actionable, because he made it to Harper herself and not to a third party.

12        In her opposition, Harper offers no evidence or argument to show that a genuine issue of

13   material fact exists with respect to Coyle's purported 2005 statement.  She argues, however, that

14   Coyle's statements to her in 2010 constitute defamation because, in making the statements, Coyle

15   admitted that he had been speaking with others about her and that he told them that he did not

16   believe she was raped.  ECF No. 202 at 17.

17        The Court concludes that Coyle is entitled to summary judgment on this claim.  There is no

18   evidence on the record showing that Coyle made any statement, defamatory or not, about Harper

19   in 2005.  With respect to Coyle's 2010 statement that "nobody" believed that Harper had been

20   raped, Harper admitted during her deposition that Coyle made it to her at Washington Square Park

21   and that nobody else was present during this conversation.  Harper Dep. at 182, ECF No. 186, Ex.

22   C.  This statement is not actionable defamation for two reasons.  First, while it is a plausible

23   inference from Coyle's alleged statement that he heard *others* say they did not believe Harper had

24   been raped, there is nothing in his statement to support the conclusion that he shared *his* belief that

25   she had not been raped with others, even if he told Harper that in the 2010 conversation.  Second,

26

27   ────────────────

[10] Coyle also argues that the claim is time-barred, but the Court does not reach this issue because

28   the claim fails on the merits.

United States District Court
Northern District of California

1    even if Coyle did make the statement to others, his profession of a lack of belief in Harper's

2    claims was a statement of opinion that is protected by the First Amendment; the statement

3    expressed Coyle's viewpoint as to whether he found Harper's rape allegations to be believable.

4         Accordingly, Coyle's motion for summary judgment on this claim is GRANTED.

5              **2.    Kennedy**

6         Harper alleges that Kennedy defamed her by "falsely telling numerous people that he 'has

7    reason to believe' that [she] 'makes up stories' about men, in particular, Phillip Hacket and Ryan

8    Lugbauer, and possibly others."  TAC ¶ 21.

9         Kennedy moves for summary judgment on this claim on the ground that Harper has no

10   evidence to show that he made any defamatory statement about her.[11]

11        Harper opposes the motion, citing to evidence she claims precludes summary judgment.

12   Harper cites generally to the attachment to Lugbauer's police report; to "Table One," which is an

13   attachment to her opposition; and to Kennedy's declaration to show that Kennedy made

14   defamatory statements about her and that Lugbauer republished such statements.[12]  A review of

15   these documents and the evidence they cite does not suggest, much less establish, that Kennedy

16   defamed Harper.  At best, this evidence establishes that Kennedy *heard* others' statements about

17   Harper.[13]  Harper also cites generally to "Exhibits B and Z, Lugbauer Exhibit 4" to establish that

18   Lugbauer "republished Kennedy's statements."  ECF No. 239 at 24.  These citations are

19   insufficient to raise a genuine issue of material fact because Harper fails to cite to particular facts

20   within these documents as required by Rule 56(c).  See Keenan v. Allan, 91 F.3d 1275, 1279 (9th

---

[11] Kennedy also argues that this claim is time-barred, but the Court does not reach this issue because the claim fails on the merits.

[12] See ECF No. 215, Ex. 2 ("Exhibit B"); ECF No. 239, Ex. 1 ("Table One").

[13] See Kennedy Decl. ¶¶ 13, 26 ("The subject of HARPER and LUGBAUER's issues and dispute became a topic of conversation in Washington Square Park among the 'dog people', and park passer-bys (without dogs). I am unaware if the subject was discussed in detail, as I was uninterested in hearing about it, and did not care to be engaged about a neighborhood dispute.  I generally disconnected, and left if the subject came up."); See ECF No. 215, Ex. 2 ("Exhibit B") (providing that Kennedy found a letter that Harper had taped to a pole); ECF No. 239, Ex. 1 ("Table One") (providing that Lugbauer purportedly made defamatory statements about Harper).

22

1   Cir. 1996) (holding that the non-moving party must "identify with reasonable particularity the

2   evidence that precludes summary judgment" and that it is not the duty of the district court to "to

3   scour the record in search of a genuine issue of triable fact").  Finally, Harper cites generally to her

4   own declaration to show that "Kennedy told Bernardo Quintana he believed Plaintiff was 'making

5   up stories' about Lugbaur [sic]," but she fails to point to specific facts in her declaration as

6   required by Rule 56(c).  In any event, any statements that Kennedy purportedly made to Quintana

7   would be inadmissible hearsay.

8           Because no genuine issue of material fact exists with respect to whether Kennedy defamed

9   Harper, Kennedy's motion for summary judgment on this claim is GRANTED.

10                  **3.      Page**

11          Harper alleges that Page defamed her by engaging in "gossip that [she] was unchaste in

12  that she was sexually 'easy,' sexually available, sexually promiscuous, sexually provocative and

13  sexually aggressive."  TAC ¶ 25.

14          Page joined the summary judgment motions of each of the other Defendants, thereby re-

15  asserting such motions on his own behalf.[14]   See ECF Nos. 187, 188, 222.  The Court interprets

16  Page's joinder as an assertion that Harper has no admissible evidence that Page has made a

17  defamatory statement about Harper.

18          Harper has not addressed the allegations or the evidence supporting her claims against

19  Page in any of the oppositions she filed.  Accordingly, no genuine issue of material fact exists with

20  respect to whether Page defamed Harper.  Page's motion for summary judgment on this claim is

21  therefore GRANTED.

22

23

24  _____

    [14] Defendant Larry Page joined the other Defendants' motions for summary judgment.  See ECF
25  No. 187, 189, 222.  Because the Court finds that the facts underlying Harper's defamation claim
    against Page are sufficiently similar to the defamation claims she has asserted against the other
26  Defendants, the Court finds it appropriate to permit Page to adopt the arguments presented by the
    other Defendants in their motions for summary judgment.  See Levin Metals Corp. v. Parr-
27  Richmond Terminal Co., 781 F. Supp. 1448, 1449 (N.D. Cal. 1991) (permitting joinder to motion
    for summary judgment where "the fact situations" of the movant and the party seeking joinder are
28  "sufficiently similar to rule on both motions together herein").

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

      **4.**      **Ertola**

Harper alleges that Ertola defamed her "to other men at least up to December of 2010, by – among other statements – falsely telling numerous people that Plaintiff is sexually 'easy' or promiscuous." TAC ¶ 23.

Ertola moves for summary judgment on this claim on the ground that Harper has no admissible evidence to establish that he made a defamatory statement about Harper. Ertola notes that Harper's only evidence with respect to this claim is a statement in her own declaration stating that Phil, Ertola's neighbor, told her that Ertola told others that she was "easy." See Harper Decl., ECF No. 215, Ex. 1 ¶ 79. Ertola argues that this evidence is inadmissible hearsay. Ertola further contends that even if this evidence were admissible, it would nevertheless be insufficient to raise a genuine issue of material fact because Harper has no evidence to show that he made these purported statements in a sexual context.

Harper opposes the motion, arguing that the statement in her declaration with respect to the statements that Ertola purportedly made to Phil is not inadmissible hearsay, because she is not offering the statement for the truth of the matter asserted, but rather, she offers it as "an operative fact." ECF No. 238 at 10.

The Court concludes that Ertola is entitled to summary judgment on this claim. The only evidence that Harper has presented in opposition to City Defendants' motion is the statement in her declaration providing that Ertola told Phil that Harper is "easy." This statement is hearsay and therefore is inadmissible and insufficient to defeat summary judgment. See Winkler v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 930 F.2d 1364, 1367 (9th Cir. 1991) (holding that declaration asserting a statement of a third party, which in turn conveyed the statement of a fourth party, is "inadmissible double hearsay which cannot be considered on a motion for summary judgment"). Additionally, the statement, even if made, appears to be one of opinion, which is protected by the First Amendment.

Accordingly, Ertola's motion is GRANTED with respect to this claim.

1           **5.**      **Clay**

Harper alleges that Clay defamed her by writing a letter to her landlord saying that Harper is "quite ill in the mind," that she has a history of summoning the police on many occasions for what turn out to be invalid reasons, and that she accused a neighbor of rape.  TAC ¶ 51.

Clay moves for summary judgment on this claim on the ground that any statements she made about Harper are protected by the litigation privilege or the First Amendment.[15]  Clay admits that she wrote the letter referenced in Harper's complaint, which Clay authenticated and submitted into evidence.  See ECF No. 241, Ex. 1, Clay Decl. ¶ 19 & Ex. 8.  Clay contends that she wrote this letter in response to Harper's threats of litigation.

In her opposition, Harper argues that Clay has not submitted enough evidence to establish that her letter to her landlord is protected by the litigation privilege, as Clay did not write the letter in response to a threatened eviction.  Harper also contends that the litigation privilege cannot apply to the letter because, even if eviction proceedings were likely, Harper would not have been a party to such proceedings.

The Court concludes that Clay is entitled to summary judgment on this claim.

A communication made in "any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law" is privileged.  Cal. Civ. Code § 47.  The litigation privilege affords "all participants in litigation, including litigants, prospective witnesses and counsel, the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions by extending a broad privilege for publications made in the course of litigation." Pac. Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1132 (Cal. 1990).  "The privilege has been broadly construed to apply to demand letters and prelitigation communications by an attorney." Knoell v. Petrovich, 76 Cal. App. 4th 164, 169 (Cal. Ct. App. 1999).

The statements in Clay's letter to her landlord are protected by the litigation privilege.

---

[15] Clay also argues that this claim is time-barred to the extent it is based on events that occurred prior to November 18, 2009, but the Court does not reach this issue because the claim fails on the merits.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Clay has submitted evidence showing that Harper told her that she could be evicted because of her

2  "psychotic son," and that Harper sent her an email demanding that she "get Nick out of [the

3  building]" and threatening to "take legal action very soon."  Clay Decl. ¶¶ 12, 18 & Ex. 4, 7.  This

4  evidence shows that Harper threatened to initiate a legal proceeding to end Clay's tenancy in the

5  building.  As such, the letter that Clay wrote to her landlord in response to such threats is

6  privileged because it was written by a possible party to the proceeding at issue.  See Block v.

7  Sacramento Clinical Labs, Inc., 131 Cal. App. 3d 386, 393 (1982) ("[W]hen the communication

8  has some relation to a proceeding that is actually contemplated in good faith and under serious

9  consideration by . . . a possible party to the proceeding, the communication is privileged.")

10  (citation and internal quotation marks omitted).

11      Accordingly, Clay's motion for summary judgment on this claim is GRANTED.

12          **6.    Tennenbaum**

13      Harper alleges that Tennenbaum defamed her by telling Clay "and others" that she is

14  "mentally ill," that she made false allegations of rape, and that she otherwise made false

15  statements.  TAC ¶ 51.  She also alleges that Tennenbaum defamed her by responding to an email

16  that Lugbauer sent him in which Lugbauer characterized her as, among other things, "paranoid"

17  and "disturbed."  Id. ¶¶ 52-53.

18      Tennenbaum moves for summary judgment on this claim on the ground that any

19  statements he made to Lugbauer are opinion statements protected by the First Amendment; that

20  Harper lacks any non-hearsay evidence to establish that Tennenbaum made defamatory statements

21  about her; and that the statements that Tennenbaum made to Clay and Lugbauer are privileged

22  communications under California Civil Code section 47 and California Government Code section

23  821.6 because they arose from his investigation of Harper's 911 call on August 9, 2009.

24      Harper opposes the motion, arguing that her claims are not grounded on inadmissible

25  hearsay and that Tennenbaum's statements are not entitled to immunity because he not investigate

26  any of the crimes [she] reported[.]"  ECF No. 238 at 20.

27      The Court concludes no genuine issue of material fact exists as to whether Tennenbaum

28

26

defamed Harper.

First, much of the evidence that Harper cites is uncorroborated, lacks foundation, or is inadmissible hearsay; as such, this evidence is insufficient to raise a genuine issue of material fact as to whether Tennenbaum defamed her.[16]  See Filipino Yellow Pages, 198 F.3d at 1152 (holding that "vague, uncorroborated, and clearly self-interested testimony did not create a genuine issue for trial"); see also Nelson, 83 F.3d at 1081-82 (citation omitted) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

Second, the remaining pieces of evidence that Harper cites, even assuming that they are admissible, show that any statements made by Tennenbaum were opinion statements protected by the First Amendment.  Harper cites to the letter that Clay sent to her landlord.  Though Harper herself did not authenticate this letter, the letter was authenticated by Clay.  See ECF No. 241, Ex. 1, Clay Decl. ¶ 19 & Ex. 8; see Orr v. Bank of Am., NT & SA, 285 F.3d 764, 776 (9th Cir. 2002) ("[W]hen a document has been authenticated by a party, the requirement of authenticity is satisfied as to that document with regards to all parties, subject to the right of any party to present evidence to the ultimate fact-finder disputing its authenticity.").  The letter states that Tennenbaum told Clay that Harper was "ill in the mind" and that Harper's rape allegations were unsupported.  Tennenbaum's alleged statements as described by Clay are inadmissible hearsay.  Even if they were admissible, however, the statements would constitute statements of opinion.  ECF No. 241, Ex. 1, Clay Decl., Ex. 8 ("Carl T, who was here and who met Nicholas.  He *expressed the opinion* that my son was calm and not a threat, and that Gail Harper was quite ill in the mind herself.") (emphasis added).

---

[16] See Harper Decl. ¶ 77 (providing that Officer Terry Laubach told Harper that other offers were "attacking [her] character . . . in the same terms Carl T defamed me to Lugbauer and Clay") (hearsay); Harper Decl. ¶ 53 (providing that "Carl T falsely told [Clay] that I am "mentally ill" and otherwise defamed me") (lacks personal knowledge); ¶ 55 (providing that "Carl T privately responded to Lugbauer's email, agreeing with Lugbauer's defamatory statements) (lacks personal knowledge); ¶ 69 (providing that Harper "had no idea that Carl T had publicly launched his campaign against [her], both defaming me to my neighbors and to other police officers, and actively interfering with my access to police services and to the courts") (speculative and uncorroborated).

1      Harper also cites to an email chain between Tennenbaum and Lugbauer, in which

2   Tennenbaum expressed his opinion that Harper was "losing her grip" and was "having trouble

3   coping."  ECF No. 215, Ex. 25 ("Exhibit Z").  This email is inadmissible, because Harper has not

4   authenticated it.  Even if it were admissible, however, the email does not raise a genuine issue of

5   material fact, because Tennenbaum's statements in the email are statements of opinion protected

6   by the First Amendment.

7      Finally, Harper points to one of Clay's journal entries, in which Clay writes that

8   Tennenbaum had a conversation with her during which he "confided that *he thinks* [Harper has]

9   gone off the deep end," and from which Clay concluded that Harper had not been raped.  ECF No.

10  215, Ex. 24 ("Exhibit Y") (emphasis added).  This journal entry also is inadmissible because

11  Harper has not authenticated it.  Even if it were admissible, however, the entry is insufficient to

12  defeat summary judgment because the statements that are attributed to Tennenbaum are statements

13  of opinion that are protected by the First Amendment.

14      Accordingly, Tennenbaum's motion for summary judgment is GRANTED.

15          **6.      Lugbauer**

16      Harper alleges that Lugbauer defamed her by "falsely claiming that he had not sexually

17  assaulted [her] and that [she] had consented to engaging in sexual activity with him, and falsely

18  claiming that Plaintiff was 'crazy' or mentally and emotionally "unstable," and was stalking,

19  harassing and bullying him and people associated with him."  TAC ¶ 29.

20      Lugbauer moves for summary judgment on this claim on the ground that Harper presents

21  no evidence that he made any defamatory statements and that any statements may have made

22  about Harper are protected by the First Amendment or by the litigation privilege.[17]

23      In her opposition, Harper contends that Lugbauer defamed her and that none of Lugbauer's

24  defamatory statements are privileged or protected by the First Amendment.  In support of this

25  argument, Harper cites generally to her own declaration, "Exhibit A," and to an unauthenticated

26

27  _____
    [17] Lugbauer also contends that this claim is time-barred, but the Court does not reach this issue
28  because the claim fails on the merits.

United States District Court
Northern District of California

police report that Lugbauer allegedly filed against her, "Exhibit C."[18]  Harpers' fails to cite to specific facts in these documents that raise a genuine issue of material fact as to whether Lugbauer defamed her as required by Rule 56(c).  See Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (holding that the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment" and that it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact").  Because Harper fails to show that a genuine issue of material fact exists with respect to whether Lugbauer made any actionable defamatory statements about her, Lugbauer's motion is GRANTED.

**C.      Section 52.4**

Harper alleges that Kennedy, Lugbauer, Ertola, and Clay violated section 52.4 by "engaging in a conspiracy to commit a sexual assault on [her]."  TAC ¶ 73.  Harper alleges that Lugbauer "carried out the goal of that conspiracy" when he sexually assaulted her and "commit[ed] an object rape" on her in December 2005.  Id.  Harper further avers that, following the December 2005 rape, Lugbauer stalked, harassed, defamed, and terrorized her, as well as vandalized her car, with the remaining Defendants' "encouragement and participation."  Id.  Harper further alleges that, prior to 2009, she had no reason to suspect that Lugbauer's actions toward her had been "influenced or aided" by others.  Id. ¶ 25.  But, in November 2009, Harper discovered during the proceedings concerning Lugbauer's request for a restraining order against her that Kennedy, Lugbauer, Ertola, and Clay had gossiped about her and falsely claimed that she was sexually promiscuous.  Id.

Under California Civil Code section 52.4, "[a]ny person who has been subjected to gender violence may bring a civil action for damages against any responsible party."  Cal. Civ. Code § 52.4(a).  Gender violence is "a form of sex discrimination" that takes either of the following forms:

(1)      One or more acts that would constitute a criminal offense under state law

---

[18] See ECF No. 240 (citing ECF No. 215, Ex. 1, "Exhibit A"; ECF No. 214, Ex. 3, "Exhibit C").

United States District Court
Northern District of California

1   that has as an element the use, attempted use, or threatened use of physical
2   force against the person or property of another, committed at least in part
    based on the gender of the victim, whether or not those acts have resulted in
3   criminal complaints, charges, prosecution, or conviction.

4   (2)     A physical intrusion or physical invasion of a sexual nature under coercive
5   conditions, whether or not those acts have resulted in criminal complaints,
    charges, prosecution, or conviction.

6       Cal. Civ. Code § 52.4(c).

7       Generally, an action under section 52.4 must be commenced within three years of the act at

8   issue.  Cal. Civ. Code § 52.4(b).

9       Harper's allegations with respect to Kennedy, Ertola, and Clay are based on the purported

10  existence of a conspiracy between them and Lugbauer, the goal of which was Lugbauer's sexual

11  assault of Harper.

12      To be actionable under section 52.4, Harper's conspiracy claim must "constitute a criminal

13  offense under state law."  Cal. Civ. Code § 52.4(c).  A person may be convicted of a criminal

14  conspiracy on "proof that the defendant and another person had the specific intent to agree or

15  conspire to commit an offense, as well as the specific intent to commit the elements of that

16  offense, together with proof of the commission of an overt act by one or more of the parties to

17  such agreement in furtherance of the conspiracy."  People v. Johnson, 57 Cal. 4th 250, 257 (Cal.

18  2013) (citations and internal quotation marks omitted).  "Conspiracy is an inchoate offense, the

19  essence of which is an agreement to commit an unlawful act."  Id. at 258 (citations omitted).

20  Indeed, "[t]he crime of conspiracy punishes the agreement itself and does not require the

21  commission of the substantive offense that is the object of the conspiracy."  Id. (citations and

22  internal quotation marks omitted).  "To prove an agreement, it is not necessary to establish the

23  parties met and expressly agreed; rather, a criminal conspiracy may be shown by direct or

24  circumstantial evidence that the parties positively or tacitly came to a mutual understanding to

25  accomplish the act and unlawful design."  Id. at 264 (citations and internal quotation marks

26  omitted).

        **1.      Ertola**

27      Ertola moves for summary judgment on this claim on the ground that Harper has no

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1   evidence to establish that he committed any act of gender violence or that he knew Lugbauer.

2       Harper opposes the motion, arguing that she does not need to prove that Ertola knew

3   Lugbauer to show that he participated in the alleged conspiracy with Lugbauer. She argues that

4   she can prove the existence of a conspiracy with circumstantial evidence, namely evidence

5   showing that Ertola and others spread "defamatory rumors" about her "being promiscuous

6   ('easy')." ECF No. 238 at 25 (citing "Exhibit A ¶¶ 2-3; 79, 90-99; Exhibit B at 1; Exhibits P, R;

7   SS, TT; TAC ¶¶ 23, 26, 73, 102-103").

8       The Court concludes that Ertola is entitled to summary judgment on this claim. The claim

9   is premised on the existence of a conspiracy between Ertola and Lugbauer, which requires

10  evidence of an agreement to commit a crime. Harper points to no evidence showing that Ertola

11  and Lugbauer had an agreement. She argues that the existence of the conspiracy is shown by the

12  statements that Ertola made about her to other men in the neighborhood about her sexual

13  promiscuity.[19] Even assuming that Ertola in fact made these statements, such statements would be

14  insufficient to raise a genuine issue as to whether Ertola and Lugbauer "positively or tacitly came

15  to a mutual understanding to" sexually assault Harper, as there is no evidence tying those

16  statements to an agreement. Johnson, at 254.

17      Accordingly, Ertola's motion for summary judgment on this claim is GRANTED.

18

19  [19] To support her allegation that Ertola made statements about Harper's sexual habits to others,
    Harper cites generally to (1) five exhibits that do not mention Ertola or contain evidence relevant
20  to this claim, namely exhibits B, P, R, SS, and TT; (2) to the operative complaint, which is not
    evidence; and (3) to uncorroborated and speculative statements in her declaration, some of which
21  are inadmissible hearsay and all of which fail to raise a genuine issue of material fact. Harper's
    declaration provides that Ertola's neighbor, Phil, told Harper that Ertola told others that she was
22  "easy," which is inadmissible double hearsay, and that "Chad Ertola is part of a tightly knit
    community of men in my neighborhood who are hostile toward me and who talked about me
23  among themselves in a defamatory manner that was intended to arouse unwanted sexual interest in
    me," which is conclusory, speculative, and uncorroborated. See Nelson v. Pima Cmty. Coll., 83
24  F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual
    dispute for purposes of summary judgment.") (citation omitted); see also Villiarimo v. Aloha
25  Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) ("[T]his court has refused to find a 'genuine
    issue' where the only evidence presented is 'uncorroborated and self-serving' testimony.")
26  (citations omitted).

27

28

United States District Court
Northern District of California

### 2.      Kennedy

Kennedy moves for summary judgment on this claim on the ground that Harper has no evidence to establish that he entered into an agreement with the other Defendants or that he knew about the alleged sexual assault.  ECF No. 213 at 12-13.

In her opposition, Harper argues that Kennedy had an agreement with the other Defendants, but the evidence she cites in support of this argument fails to raise a genuine issue of material fact.  First, none of the admissible evidence to which Harper specifically points establishes, or even suggests, the existence of an agreement.[20]  Second, Harper cites generally to several exhibits without citing the particular facts that would preclude summary judgment as required by Rule 56(c); for that reason, the Court does not consider them for the purpose of resolving this motion.[21]  Keenan, 91 F.3d  at 1279 (holding that the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment" and that it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact").  Third, Harper cites to the operative complaint, which is not evidence.[22]  Finally, Harper cites to the same evidence that she cited in her opposition to Kennedy's motion for summary judgment on the defamation claim she asserted against him.  As described in section III.B.2, supra, this evidence is insufficient to show or suggest that Kennedy made defamatory statements about Harper.  It also is insufficient to show or suggest that Kennedy had an agreement with the other Defendants.

---

[20] ECF No. 215, Ex. 1 ("Exhibit A") (Harper's declaration) ¶¶ 2-3 (describing Harper's celibacy and physical characteristics); ¶ 79 (providing that Phil told Harper that Ertola told others that she was "easy") (inadmissible hearsay); ¶¶ 90-99 (providing that Kennedy knew Lugbauer and that Harper told Kennedy "that [she] did not want to have anything to do with him"); see also ECF No. 215, Ex. 2 ("Exhibit B") (attachment to Lugbauer's police report).

[21] See ECF No. 215, Ex. 15 ("Exhibit P") (excerpts from Wishnie's deposition); ECF No. 215, Ex. 17 ("Exhibit R") (Lugbauer's application for a restraining order); ECF No. 215, Ex. 44 ("Exhibit SS") (excerpts of Joe Gwaltney's deposition); ECF No. 215, Ex. 44 ("Exhibit TT") (judgment entered against Coyle in an unrelated case).

[22] See TAC ¶¶ 23, 26, 73, 102-103.

1   Accordingly, Kennedy's motion for summary judgment on this claim is GRANTED.

2   **3.   Lugbauer**

3   Lugbauer moves for summary judgment on this claim on the ground that Harper has no

4   evidence to establish that an agreement existed between himself and the other Defendants.[23]

5   In her opposition, Harper argues that the "rape supplies the element of criminal physical

6   force required for this cause of action."  ECF No. 240 at 23.  Harper, however, does not provide

7   any argument or point to any evidence on the existence of an agreement between Defendants.

8   Because there is no genuine issue of material fact as to whether Lugbauer was a member of the

9   alleged conspiracy to violate Harper's rights under section 52.4, Lugbauer's motion is

10  GRANTED.

11  **4.   Clay**

12  Clay moves for summary judgment on this claim on the ground that Harper has no

13  evidence to support her section 52.4 claim against her.

14  Harper's opposition incorporates by reference the arguments she made in her opposition to

15  Lugbauer's motion for summary judgment as to Harper's section 52.4 claim against him.  See

16  ECF No. 241 at 16.  These arguments do not point to any evidence showing that Clay committed

17  any act within the meaning of section 52.4 or that she had any sort of an agreement with

18  Defendants to perform an act falling within the scope of section 52.4.  Accordingly, Clay's motion

19  for summary judgment on this claim is GRANTED.

20  **D.    Section 51.7**

21  Harper alleges that Lugbauer, Kennedy, Clay, and Ertola subjected her to violence and

22  intimidation based on her sex in violation of California Civil Code section 51.7.  TAC ¶¶ 81-82.

23  Under California Civil Code section 51.7,

24  > All persons within the jurisdiction of this state have the right to be
25  > free from any violence, or intimidation by threat of violence,
    > committed against their persons or property because of political
26

27  [23] Lugbauer also argues that the claim is time-barred to the extent it relies on acts that took place before November 18, 2007, but the Court does not reach this issue because the claim fails on the merits.

28

United States District Court
Northern District of California

affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics.  The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive.

The characteristics that can give rise to a section 51.7 claim include "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  Sex includes, but is not limited to, a person's gender.  Cal. Civ. Code § 51(e)(5).

### 1.     Ertola

Ertola moves for summary judgment on this claim on the ground that Harper has no evidence to show that he used or threatened violence against her or that he had an indirect role in any violence or a threat of violence against her.  ECF No. 182 at 8.

Harper opposes the motion, offering the same arguments and evidence she offered in opposition to Ertola's motion for summary judgment on her section 52.4 claim, namely that Ertola made statements about her alleged promiscuity to other men in the neighborhood.  Even assuming that Ertola made these statements, Harper's section 51.7 claim against Ertola would nevertheless fail because no genuine issue of material fact exists with respect to whether Ertola used or threatened violence against Harper, or entered into an agreement to inflict or threaten violence against Harper.

Accordingly, Ertola's motion for summary judgment is GRANTED.

### 2.     Kennedy

Kennedy moves for summary judgment on this claim on the ground that Harper has no evidence to show that he used or threatened violence against Harper on account of her sex, or that he had an agreement with any of the other Defendants.  ECF No. 213 at 13.

Harper opposes the motion, citing the same evidence she cited in opposition to Kennedy's motion for summary judgment with respect to her section 52.4 claim against Kennedy.  See ECF

No. 239 at 20-23.   As discussed in the section III.C.2, <u>supra</u>, this evidence, to the extent it is admissible, does not show the existence of an agreement.  This evidence also does not show that Kennedy threatened or used violence against Harper, either directly or indirectly.  Accordingly, Kennedy's motion for summary judgment on this claim is GRANTED.

### 3.    Lugbauer

Lugbauer moves for summary judgment on this claim on the ground that Harper has no evidence showing that any of his actions toward Harper were motivated by her gender.[24]

Harper opposes the motion, arguing that Lugbauer subjected her to violence or threats of violence on the basis of her gender.  Harper cites generally to her declaration to support this contention but does not point to any specific facts that raise a genuine issue of material fact with respect to whether Lugbauer violated her rights under section 51.7 as required by Rule 56(c).  <u>See</u> ECF No. 240 at 25 (citing "Exhibit A" without any additional specificity); <u>see also</u> <u>Keenan</u>, 91 F.3d at 1279 (holding that the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment" and that it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact").  Accordingly, Lugbauer's motion for summary judgment on this claim is GRANTED.

### 4.    Clay

Clay moves for summary judgment on this claim on the ground that there is no evidence on the record showing that she committed or threatened any act of violence against Harper within the meaning of section 51.7.

Harper's opposition incorporates by reference the arguments she made in her opposition to Lugbauer's motion for summary judgment as to her section 51.7 claim against him.  <u>See</u> ECF No. 241 at 16.  As discussed above, these arguments are insufficient to raise a genuine issue of material fact as to whether Defendants violated Harper's rights under section 51.7.  Accordingly, Clay's motion for summary judgment is GRANTED.

---

[24] Lugbauer also contends that this claim is time-barred, but the Court does not reach this issue because the claim fails on the merits.

United States District Court
Northern District of California

**E.     Conspiracy to Commit Battery**

Harper alleges that Lugbauer, Kennedy, and Ertola conspired to commit battery on her, and that this conspiracy resulted Lugbauer's sexual attack of Harper in December 2005.  TAC ¶¶ 102-07.

To prove the existence of a civil conspiracy under California law, a plaintiff must show "(1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts."  Wasco Products, Inc. v. Southwall Technologies, Inc., 435 F.3d 989, 992 (9th Cir. 2006) (citation omitted).  The formation of a conspiracy constitutes "an agreement to commit wrongful acts."  People v. Beaumont Inv., Ltd., 111 Cal. App. 4th 102, 137 (Cal. Ct. App. 2003) (citations omitted).  "[T]o the extent that knowledge of the scheme's unlawful purpose is required, it may be inferred from the surrounding circumstances, including the nature of the acts done, the relation of the parties, and the interests of the defendants."  Id. (citations omitted).

**1.     Lugbauer**

Lugbauer moves for summary judgment on this claim on the ground that the claim is barred by the statute of limitations and there is no evidence to establish that Defendants had an agreement.

Harper argues in her opposition that the statute of limitations must be tolled under various theories.  She also cites generally to several documents in support of the proposition that her alleged rape was caused by "comments from Kennedy and the unnamed firemen and others" about her "sexual skills."  ECF No. 240 at 4 (citing to "Exhibit A," "Exhibit B," and "Table One").  She does not, however, point to any particular facts within these documents that would preclude summary judgment as required by Rule 56(c).  See Keenan, 91 F.3d at 1279 (holding that the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment" and that it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact").  Because this claim is premised on the existence of a conspiracy, which requires evidence of an agreement, and because Harper has not offered any evidence to

36

raise a genuine issue of material fact as to the existence of an agreement, Lugbauer's motion for summary judgment on this claim is GRANTED.

### 2.     Kennedy

Kennedy moves for summary judgment on this claim on the ground that Harper has no evidence to show that he had an agreement with Defendants that resulted in sexual battery against her.

Harper opposes the motion, citing the same evidence she cited in opposition to Kennedy's motion for summary judgment with respect to her section 52.4 claim against him.  See ECF No. 239 at 20-23.   As discussed in section III.C.2, supra, this evidence, to the extent it is admissible, does not show or suggest the existence of an agreement.  Accordingly, Kennedy's motion for summary judgment on this claim is GRANTED.

### 3.     Ertola

Ertola moves for summary judgment on this claim on the ground that Harper has no evidence to show that he entered into any agreement to commit an unlawful act.

Harper opposes the motion, arguing that she has sufficient circumstantial evidence to show that Ertola agreed to "the course of action resulting in [her] rape." ECF No. 238 at 25.  Harper cites to the same evidence she cited in her opposition to Ertola's motion for summary judgment with respect to her section 52.4 claim against him, namely evidence showing that Ertola told Phil that Harper is "easy."  As discussed in section III.C.1, supra, this evidence is insufficient to show that a genuine issue of material fact exists with respect to whether Ertola participated in a conspiracy with the other Defendants, because such evidence does not show or suggest the existence of an agreement.

Accordingly, Ertola's motion is GRANTED.

## IV.     CONCLUSION

Each of the motions for summary judgment brought by DEFENDANTS is GRANTED in its entirety.  Because none of Harper's claims have survived these motions, the Clerk shall vacate all deadlines and terminate this action.  The defendants shall jointly file a proposed judgment

United States District Court
Northern District of California

37

1 | within 14 days of the date this order is filed.

2 | **IT IS SO ORDERED.**

3 | Dated:  March 21, 2014

4 | _____

5 | JON S. TIGAR
United States District Judge